UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>            Plaintiff, )<br>v. )<br>)<br>)<br>CHARLES WASHINGTON, )<br>)<br>            Defendant. )<br>_____ ) | Criminal No.  06-129 (RMC) |

**DEFENDANT'S MEMORANDUM IN AID OF SENTENCING**

Charles Washington, through undersigned counsel, hereby respectfully submits this memorandum in aid of sentencing pursuant to Federal Rule of Criminal Procedure 32.  Mr. Washington pleaded guilty to making a false statement in violation of 18 U.S.C. § 1001(a)(2). Specifically, he provided an outdated address while submitting an application for Hurricane Katrina relief assistance. Based on all the sentencing factors in this case, Mr. Washington respectfully asks the Court to sentence him to a period of probation.  The sentencing guidelines allow for such a sentence provided that the first six months of it are served in community confinement.

**DISCUSSION**

Charles Washington is 52 years old.  He has two daughters who lived in New York and Pennsylvania.  He shares a close relationship with each of them and visits with them regularly. Mr. Washington was born and reared in New Orleans.  He spent his younger years living in state-run facilities and foster homes in Louisiana.  At the age of eleven, his parents were able to reconcile some issues in their own lives and Mr. Washington was able to return to living with

them. He went to high school in New Orleans, and upon his graduation lived in various cities in the upper northwest United States before returning to New Orleans. Though Mr. Washington has spent significant time in Pennsylvania and New York, until Hurricane Katrina, he considered New Orleans his city of residence. From approximately 1993 until 2004, he maintained a room in his sister's home at 4775 Gawain Drive, in New Orleans. During that time period this address is where Mr. Washington received mail and used on his Louisiana driver's license. This is the address he provided in order to receive relief assistance in 2005. In 2005, Mr. Washington was no longer living at 2775 Gawain drive. His sister had passed away and her husband had sold the house. Mr. Washington was living with friends and relatives in New Orleans, but did not have a permanent fixed address. When the hurricane hit, Mr. Washington was staying with his niece, LaShawn Victor, and some friends of the family. Mr. Washington eventually moved out of his niece's home and took up temporary residence with a friend named Jewel Hooks. When Ms. Hooks's street was evacuated, Mr. Washington caught a ride to Arkansas and then took a bus to Washington, DC.

  Initially, Mr. Washington lived at 200 53rd Street, N.E. with his nephew, Dwayne Washington and his wife and their four children. While at this address, Mr. Washington applied for F.E.M.A. relief assistance using his old Gawain Street address. He received a check for $2000 from F.E.M.A. Mr. Washington cashed this check and moved out of his nephew's home. Unbeknownst to Mr. Washington, F.E.M.A. mailed two more checks to him at his nephew's address. One check was for $2358 and the other check was for $10,391.51. Mr. Washington's nephew intercepted each of these checks and deposited them into bank accounts to which he had access. Mr. Washington's nephew was able to obtain all of the funds for the $2358 check. The

$10,391.51 check was never successfully cashed.

As the allegations contained in the indictment make clear, Mr. Washington was wrong to provide an address that was not accurate. The government does not allege that Mr. Washington was otherwise ineligible for disaster relief assistance, only that he made a false statement in applying for such relief. Mr. Washington is deeply regretful that he made such a decision. He explains that he had been through a difficult situation in leaving Louisiana and felt that his situation was desperate. By being untruthful, he exacerbated his situation.

When Mr. Washington was approached by law enforcement, he admitted to his wrongdoing. He pled guilty in this matter pre-indictment.

Although Mr. Washington has criminal convictions, prior to his involvement in the instant matter, he had not been involved with the criminal justice system in any way in nearly ten years. As Mr. Washington describes, he is approaching the "second half" of his life and has sought to live it differently. Mr. Washington's poor choice to make a false statement while applying for aid was not consistent with his desire to live uprightly and it depresses him greatly. Mr. Washington urges the Court to give him the opportunity to show that the grave mistake he has made is inconsistent with the person he has become and to impose a sentence that substitutes community confinement for incarceration as permitted by the guidelines.

In United States v. Booker, the Supreme Court directed sentencing courts to consider the factors set forth in 18 U.S.C. § 3553(a) in addition to consideration of any applicable sentencing guidelines. These factors include: "The nature and circumstances of the offense and the history and characteristics of the defendant; . . . the kinds of sentences available; . . . the need to avoid unwarranted sentence disparities among defendants with similar records who have been found

guilty of similar conduct; and . . . the need to provide restitution to any victims of the offense." 18 U.S.C. 3553(a).  Pursuant to 18 U.S.C. § 3661,

> No limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense which a court of the United States may receive and consider for the purposes of imposing an appropriate sentence.

Mr. Washington recognizes that the Court must impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, affords adequate deterrence, protects the public, and effectively provides the defendant with needed educational or vocational training and medical care. See 18 U.S.C. § 3553(a)(2).  Balancing all of the purposes of sentencing, the Court must also impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph [(a)](2) [of § 3553]." See 18 U.S.C. § 3553(a).  A sentence that restricts Mr. Washington to a halfway house for six months would be more than adequate to meet the sentencing purposes set forth in §3553(a)(2). The crime of which Mr. Washington stands convicted is not a crime of violence.  The victim involved is the United States government, which might have nevertheless released funds to Mr. Washington if he had explained that he did not have proof of his then-current address.  None of this is to suggest that Mr. Washington should not be held accountable.  Indeed, he has already suffered a toll as a result of the stress and the obligations this case have placed upon him.

It is within the bounds of this Court's discretion to fashion a sentence that will serve the needs of the public for Mr. Washington's punishment, but will also acknowledge that this is Mr. Washington's only contact with the law in nearly ten years and that he is capable of living productively in the community.

Also, although the plea agreement does not provide for an exact amount of restitution owed, Mr. Washington recognizes that he improperly received $2000 and will have to repay this amount. The government argues that Mr. Washington should have to repay additionally $2358 because his false statement facilitated the issuance of the second check, which Dwayne Washington subsequently stole and used to his own benefit. The government is aware that Dwayne Washington stole this check. Mr. Charles Washington is willing to provide whatever information is necessary to see Dwayne Washington brought to justice. Mr. Charles Washington certainly recognizes the Court's authority to impose an order of restitution under 18 U.S.C. § 3663. Mr. Washington does not seek absolution for his own responsibility, but does request the Court to recognize the equitable nature 18 U.S.C. § 3663 in deciding how much he should be required to repay for funds that the government is aware he never received.

## CONCLUSION

For all of the foregoing reasons and such other reasons as may be discussed at the sentencing hearing in this matter, Mr. Washington respectfully requests the Court consider as a governing rationale, "the general appropriateness of imposing a sentence other than imprisonment in cases in which the defendant has not been convicted of a crime of violence or otherwise serious offense." Comment Note to 18 U.S.C. § 3551 (reciting legislative history of federal sentencing scheme).

Having committed acts of which he is ashamed, Mr. Washington seeks recognition that he is capable and prepared to live the rest of his years free of involvement with the criminal justice system. A sentence of probation with a condition that he serve the first six months in a community corrections center would acknowledge that hope remains for Mr. Washington while at the same time serving society's interest in punishing him. Should the Court impose a sentence involving community confinement, it would provide Mr. Washington the opportunity to work, not simply to support himself and his two daughters, but also so that his ability to provide any restitution this Court orders is not stripped from him. See United States v. Blackburn, 105 F.Supp.2d 1067 (D.S.D. 2000) (finding that downward departure was warranted in order to allow defendant to pay restitution). It is within the bounds of this Court's discretion to fashion a sentence that will serve the needs of the public for Mr. Washington's punishment, but will also allow for the government to recoup funds Mr. Washington received through his payment of restitution.    A period of probation with six months in a community confinement center is such

a sentence.  Should the Court impose a sentence of incarceration, Mr. Washington requests that he be permitted to self-surrender.

                          Respectfully submitted,
                          A.J. KRAMER
                          FEDERAL PUBLIC DEFENDER

                          _____/S/_____
                          Tony Axam, Jr.
                          Assistant Federal Public Defender
                          625 Indiana Ave., N.W., Ste. 550
                          Washington, D.C. 20004
                          (202) 208-7500